UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **INGRAM BARGE COMPANY LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-261** |
| **CAILLOU ISLAND TOWING COMPANY INC., ET AL.** | **SECTION "L" (2)** |

**ORDER AND REASONS**

Before the Court is Claimant Cecil Brashear's "motion to Bifurcate." R. Doc. 13. Petitioner Ingram Barge Company, LLC opposes the motion, R. Doc. 20, as do Petitioners Central Gulf Towing, L.L.C. and Caillou Island Towing Co., Inc., R. Doc. 22, the latter of which also joins in Ingram's opposition.

I. **BACKGROUND**

These three consolidated limitation actions arise out of a vessel collision on November 26, 2020 near mile marker 74.4 of the Mississippi River in Plaquemines Parish. R. Doc. 1.[1] On that date, around 3:30 a.m., the M/V *La Belle*, a push boat owned and/or operated by Petitioner Caillou Island Towing Company, Inc. ("Caillou Island"), and the M/V *Helen*, a towing vessel owned and/or operated by Petitioner Central Gulf Towing, L.L.C. ("CGT"), were towing downriver a 500-foot dredge pipe owned by Claimant Manson Construction Company ("Manson"). R. Doc. 12 at 12; R. Doc. 8 (Case No. 21-489). At the same time, the *David G. Sehrt* (*DGS*), a towing vessel owned by Petitioner Ingram Barge Company, LLC ("Ingram Barge"), was pushing 18 empty barges upriver. R. Doc. 1 at 2. The *DGS* collided with the dredge pipe, allegedly causing damage to the vessels and the dredge pipe and injuring Claimant Cecil Brashear, a Jones Act seamen employed by Caillou Island who was serving aboard the *La Belle*.

---

[1] For the sake of simplicity, unless otherwise specified, all citations to the record refer to case number 21-261, the lead case in these proceedings.

Each of the vessel owners claimed exoneration from or limitation of liability under the Limitation of Liability of Shipowners Act, 46 U.S.C. § 30501, R. Doc. 1 (Case No. 21-489); R. Doc. 1 (21-953); R. Doc. 1 (21-1008). The vessel owners also all asserted claims against one another, claiming that the other shipowners' vessels were unseaworthy and/or that the captains and crews of those other vessels operated them in a negligent fashion. R. Doc. 1 (21-261); R. Doc. 4 (21-261); R. Doc. 1 (Case No. 21-262). Claimant Manson filed a claim against Ingram Barge, alleging that its negligence was responsible for damage to the dredge pipe. R. Doc. 8 (Case No. 21-489).

Additionally, Claimant Cecil Brashear, the Jones Act seaman, allegedly was "violently knocked around in his bunk" as a result of the collision, sustaining "serious injuries to his neck, head, shoulder, and arm." R. Doc. 10 at 12. He filed personal injury claims in state court. This Court then issued a stay enjoining prosecution of Brashear's state court claims. After receiving notice of the limitation proceedings, Brashear answered filed his answers and claims in the limitation proceedings. Specifically, Brashear made claims under the Jones Act, 46 U.S.C. § 30104, and/or general maritime law against Caillou Island, R. Doc. 10 at 14, and CGT, R. Doc. 12 at 13.

## II.     PRESENT MOTION

Claimant Brashear moves to bifurcate the issues of exoneration and limitation of liability from damages. R. Doc. 13. He argues that bifurcating these issues will promote judicial economy while preserving his right to have his damages claims tried before a jury in a forum of his choosing. R. Doc. 13-1 at 1. Brashear notes that his pleadings reserved his rights under the Jones Act and the Savings to Suitors clause to a jury trial. *Id.* at 2.

Petitioner CGT opposes the motion, contending that stipulations needed to grant bifurcation have not been filed by all claimants and that bifurcation could lead to inconsistent judgments. R. Doc. 21. Similarly, Petitioner Ingram Barge opposes bifurcation, arguing that bifurcating the case would "waste . . . judicial resources" because the issues of limitation and fault allocation are closely linked. R. Doc. 20. Further, Ingram Barge contends that bifurcating the case is premature because the issue of limitation should first be adjudicated before ethe Court rules on bifurcation. *Id.* Petitioner Caillou Island echoes the arguments of the other vessel owners that bifurcating the case will frustrate judicial economy. R. Doc. 22.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 42(b), a district court "may order a separate trial" of any issue or claim "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed R. Civ. P. 42(b); *see also Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir. 1994); *Guedry v. Marino*, 164 F.R.D. 181, 186 (E.D. La. 1995). The rule leaves the decision to order the separation of a particular issue to the sound discretion of the Court. *See Conkling*, 18 F.3d at 1293*; O'Malley v. U.S. Fidelity & Guar. Co.*, 776 F.2d 494, 500 (5th Cir. 1985); *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 114 (E.D. La. 1992) ("[C]ourts have repeatedly emphasized that whether to bifurcate a trial . . . is always a question committed to the sound discretion of the trial court, and the court is expected to exercise its discretion on a case-by-case basis."). Bifurcation is appropriate when the separation of issues will "achieve the purposes" of Rule 42(b). *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. Aug. 2019 update).

That said, "separate trials should be the exception, not the rule." *Laitram*, 791 F. Supp. at 114; *see also McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993) ("Separation

3

of issues, however, is not the usual course that should be followed."). Indeed, "the Fifth Circuit has . . . cautioned district courts to bear in mind before ordering separate trials in the same case that the 'issue to be tried [separately] must be so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Laitram*, 791 F. Supp. at 115 (alteration in original) (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964)). "In sum, courts must consider the justifications for bifurcation in relation to the facts of the individual case, giving particular consideration to the avoidance of prejudice, in order to determine if a separate trial is appropriate." *Id.* at 114-15 (noting that when determining whether to bifurcate, a court "must balance the equities" and "exercise its discretion on a case-by-case basis").

## IV.   DISCUSSION

The Court finds that bifurcating the proceedings into two phases—liability, including exoneration or limitation of liability, followed by damages—will achieve the purposes of Rule 42(b). Bifurcation can economize and expedite the proceedings. The limitation proceedings require the Court to determine first, whether a vessel's negligence or unseaworthiness caused the incident at issue (and apportion fault, if necessary), and second, whether the owner of the at-fault vessel had privity or knowledge of the relevant acts of negligence or unseaworthiness. *See Cupit v. McClanahan Contractors, Inc.*, 1 F.3d 346, 348 (5th Cir. 1993); *see also* 46 U.S.C. § 30505 (permitting vessel owners without "privity or knowledge" to limit liability to "the value of the vessel and pending freight"). These questions require the Court to engage in a more limited inquiry than it would in a trial that also included quantification of multiple parties' damages claims. Furthermore, liability issues will overlap across the three limitation proceedings, and the Court can coordinate discovery on liability and privity and knowledge issues to promote an expedited pretrial schedule and trial. Damages issues, on the other hand, will involve separate questions regarding the nature and scope of claimants' damages. Resolving the limitation issues

4

first will enable the Court to decide expeditiously the issue of the roles of the various vessels in causing the collision and may eliminate the need for a trial of some or all damages issues as a result of settlements or rulings on the merits.

Bifurcation will also help to avoid prejudice by preserving Claimant Brashear's ability to seek a jury trial in state court on damages. *See Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546, 552 (5th Cir. 1960) (noting claimants' "apprehension that . . . [they] will be irrevocably denied their right to jury trials," but stating that "the admiralty court in its decree denying the right to limitation can make certain that [claimants] are free to pursue the petitioner in any other forum having requisite jurisdiction"). Indeed, the Fifth Circuit has recognized the "'recurring and inherent conflict' between the exclusive jurisdiction vested in admiralty courts by the Limitation of Liability Act and the common law remedies embodied in the saving to suitors clause of 28 U.S.C. § 1333." *Texaco, Inc. v. Williams*, 47 F.3d 765, 767 (5th Cir. 1995) (citations omitted) (quoting *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 754 (2d Cir. 1988)). "Bifurcation has proved to be an effective tool to help ease the conflict" by permitting petitioners to obtain a ruling on exoneration or limitation of liability while accommodating "the presumption in favor of jury trials . . . embodied in the 'savings to suitors' clause." *In re Suard Barge Serv., Inc.*, No. 96-3185, 1997 WL 358128, at *2 (E.D. La. June 26, 1997) (quoting *In re Bergeron Marine Serv., Inc.*, No. 93-1845, 1994 WL 236374, at *1 (E.D. La. May 24, 1994)); *see also Miss. Limestone Corp.*, 4:09-CV-00036, 2010 WL 4174631, at *3 (N.D. Miss. Oct. 7, 2010) (explaining that courts have developed a "'rule' under which exclusive admiralty jurisdiction must also give way: 'once limitation is denied it is up to the claimants rather than the court whether the proceedings will continue in place or whether the injunction

will be dissolved to permit the resumption of other actions.'" (quoting *Complaint of Cameron Boat Rentals, Inc.*, 683 F.Supp. 577, 581 (W.D.La.1988)).

This Court's decision to bifurcate this proceeding is consistent with the approach taken by other federal courts considering the issue of bifurcation in the context of a limitation action. "[N]umerous courts within the Fifth Circuit have deemed it appropriate to defer ruling on issues ancillary to the limitation proceeding until after limitation was decided." *In re Miss. Limestone Corp.*, No. 4:09-CV-00036, 2010 WL 4174631, at *3 (N.D. Miss. Oct. 7, 2010); *see, e.g.*, *In re Torch, Inc.*, No. 94-2300, 1996 WL 512303, at *1 (E.D. La. Sept. 6, 1996) (stating that "[t]he case was bifurcated for trial and the only issues tried to the Court were whether the plaintiffs in limitation are entitled to exoneration and, if not, whether they are entitled to limitation"), *aff'd sub nom.*, *Torch, Inc. v. Alesich*, 148 F.3d 424 (5th Cir. 1998). Indeed, one court has observed that bifurcation "appears [to be] the preferred approach, at least within federal district courts of the Fifth Circuit." *Miss. Limestone Corp.*, 2010 WL 4174631, at *3 (quoting *In re Athena Constr., LLC*, No. CIV A 06-2004, 06-2336, 2007 WL 1668753, at *6 (W.D. La. June 6, 2007)).

Here, the Court will try liability, limitation, and apportionment of fault in the same proceeding. Although Claimant Brashear seeks to have apportionment of fault decided in the separate damage phase, R. Doc. 13-1 at 7-8, the Court finds this inefficient. Because the major actors will be before the Court in the limitation trial and because the Court will receive evidence permitting it to rule on apportionment issues at the same time it rules on liability and limitation, combining the apportionment determination is consistent with Rule 42.

Petitioners raise a several objections to bifurcation but focus in particular on the failure of all claimants to provide stipulations. In *Odeco Oil & Gas Co., Drilling Division v. Bonnette*, 74 F.3d 671 (5th Cir. 1996), the Fifth Circuit stated:

> [F]ederal courts have developed two instances in which a district court must allow a state court action to proceed: (1) when the total amount of the claims does not exceed the shipowner's declared value of the vessel and its freight, and (2) when all claimants stipulate that the federal court has exclusive jurisdiction over the limitation proceeding, and that the claimants will not seek to enforce a damage award greater than the value of the ship and its freight until the shipowner's right to limitation has been determined by the federal court.

*Id.* at 674 (emphasis omitted). Petitioners argue that bifurcation is not appropriate because not all of the claimants have not provided the type of stipulations required by *Odeco*. But, contrary to Petitioners' contentions, Claimant Brashear does not ask to proceed in state court simultaneously with the limitation proceeding; nor does he threaten the Court's exclusive jurisdiction over limitation issues. And as the shipowners' rights to limitation will be decided first while Brashear's state court case is stayed, Brashear will not be able to seek to enforce a damage award in excess of the limitation fund before limitation rights are adjudicated. Thus, the Court can protect the vessel owners' limitation rights by trying limitation first and freeing Claimant Brashear to seek damages in state court only if limitation is denied. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001).

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion to bifurcate, R. Doc. 13, is **GRANTED**. The Court will try the issues of liability, limitation, and apportionment of fault in a bench trial. Damages will be tried separately.

New Orleans, Louisiana, this 29th day of March, 2022.

_____
**UNITED STATES DISTRICT JUDGE**