# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **INGRAM BARGE COMPANY LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-261** |
| **CAILLOU ISLAND TOWING COMPANY INC., ET AL.** | **SECTION "L" (2)** |

## <u>ORDER AND REASONS</u>

Before the Court are two motions to dismiss filed by Claimant Cecil Brashear. The first motion seeks dismissal of Caillou Island Towing Company, Inc.'s counterclaim against Brashear. R. Doc. 41. Caillou Island Towing Company, Inc. opposes the motion. R. Doc. 47. Brashear's tsecond motion requests dismissal of Central Gulf Towing, L.L.C.'s (CGT's) three counterclaims. R. Doc. 49. Central Gulf Towing, L.L.C. opposes the motion. R. Doc. 52. Considering the parties' briefs, the oral arguments of counsel, the record, and the applicable law, the Court now rules as follows.

## I.    BACKGROUND

These three consolidated limitation actions arise out of an alleged vessel collision on November 26, 2020 near mile marker 74.4 of the Mississippi River in Plaquemines Parish. R. Doc. 1.[1] On that date, around 3:30 a.m., the M/V *La Belle*, a push boat owned and/or operated by Petitioner Caillou Island Towing Company, Inc. ("Caillou Island"), and the M/V *Helen*, a towing vessel owned and/or operated by Petitioner Central Gulf Towing, L.L.C. ("CGT"), were towing downriver a 500-foot dredge pipe owned by Claimant Manson Construction Company ("Manson"). R. Doc. 12 at 12; R. Doc. 8 (Case No. 21-489). At the same time, the *David G.*

---

[1] For the sake of simplicity, unless otherwise specified, all citations to the record refer to case number 21-261, the lead case in these proceedings.

*Sehrt* (*DGS*), a towing vessel owned by Petitioner Ingram Barge Company, LLC ("Ingram Barge"), was pushing 18 empty barges upriver. R. Doc. 1 at 2. The *DGS* collided with the dredge pipe, allegedly causing damage to the vessels and the dredge pipe and injuring Claimant Cecil Brashear, a Jones Act seamen employed by Caillou Island who was serving aboard the *La Belle*.

Each of the vessel owners claimed exoneration from or limitation of liability under the Limitation of Liability of Shipowners Act, 46 U.S.C. § 30501, R. Doc. 1 (Case No. 21-489); R. Doc. 1 (21-953); R. Doc. 1 (21-1008). The vessel owners all filed claims against one another, contending that the other shipowners' vessels were unseaworthy and/or that the captains and crews aboard those other vessels operated them in a negligent fashion. R. Doc. 1 (21-261); R. Doc. 4 (21-261); R. Doc. 1 (Case No. 21-262). Claimant Manson filed a claim against Ingram Barge, alleging that its negligence was responsible for damage to the dredge pipe. R. Doc. 8 (Case No. 21-489).

Additionally, Claimant Cecil Brashear, the Jones Act seaman, allegedly was "violently knocked around in his bunk" as a result of the collision, sustaining "serious injuries to his neck, head, shoulder, and arm." R. Doc. 10 at 12. He filed personal injury claims in state court. This Court then issued a stay enjoining prosecution of Brashear's state court claims. After receiving notice of the limitation proceedings, Brashear answered filed his answers and claims in the limitation proceedings. Specifically, Brashear made claims under the Jones Act, 46 U.S.C. § 30104, and/or general maritime law against Caillou Island, R. Doc. 10 at 14, and CGT, R. Doc. 12 at 13.

Caillou responded to Brashear's claims in the limitation proceeding by asserting a counterclaim against him for fraud. R. Doc. 28. Caillou alleges that, on November 17, 2020, Brashear received treatment by Dr. Geoffrey Stone for the same conditions and injuries he

alleges were caused by the November 26, 2020 collision. Brashear allegedly fraudulently concealed this pre-collision treatment during several post-collision medical visits for the injuries he claims were caused by the incident. *Id.* at 9-11. According to Caillou, Brashear told Dr. Stone that his injuries arose at home either two weeks or a month prior to November 17, 2020. *Id.* at 9. Immediately after the collision, Brashear allegedly did not report any injuries and completed his hitch on the M/V LA BELLE. *Id.* at 8. Then, on December 16, 2020 and January 8, 2021, Dr. Suneil Jolly at Louisiana Pain Specialists saw Brashear for the same injuries he complained of to Dr. Stone. During this appointment, Brashear allegedly reported that these injuries arose from the collision. *Id.* Brashear purportedly concealed from Dr. Jolly his prior treatment on November 17, 2020, as well as that his injuries and symptoms predated the November 26, 2020 collision. *Id.* Caillou alleges that Brashear concealed the same facts and made the same false representation regarding the cause of his injuries when he was seen by Dr. William Brennan with Neurological Solutions of Lafayette on February 8, 2021 and April 8, 20201, and during his independent medical evaluation by Dr. Henry Eiserloh III of Baton Rouge Orthopedic on August 10, 2021. *Id.* at 10-11. Caillou also alleges that Brashear hid and misrepresented these facts when he received an MRI on his cervical spine on January 8, 2021 and an MRI on his left shoulder on February 23, 2021. *Id.*

CGT asserted counterclaims in the limitation proceeding against Brashear for fraud and intentional misrepresentation for similar reasons. R. Doc. 34 at 4. Additionally, Caillou sued Brashear for malicious prosecution. *Id.* at 5.

All actions and limitation proceedings arising out of the November 26, 2020 collision were consolidated in this Court.

## II.      PRESENT MOTIONS

Brashear moves to dismiss Caillou's and CGT's counterclaims. R. Doc. 41; R. Doc. 49. He argues that Caillou, as a Jones Act employer, cannot assert a cognizable claim for affirmative recovery against its seamen. R. Doc.  41-1 at 1. Brashear further argues, even assuming such a claim were cognizable, Caillou fails to comply with the heightened pleading standards mandated by Federal Rule of Civil Procedure 9(b).

In opposition, Caillou contends that its claim is cognizable and that its counterclaim clears the hurdles imposed by Rule 9(b). R. Doc. 47.

As to CGT, Brashear makes similar arguments as to why its fraud and intentional misrepresentation claims do not meet the pleading requirements under Rule 9(b). R. Doc. 47. Brashear further argues that CGT's malicious prosecution is premature and non-viable.

CGT opposes Brashear's motion, arguing that its fraud and intentional misrepresentations pass muster under Rule 9(b) but agrees that its malicious prosecution is likely premature. R. Doc. 52.

## III.      DISCUSSION

### A.  Legal Standard

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Particularly, "a plaintiff must plead specific facts, not mere conclusory allegations." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). The complaint must also "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a motion to dismiss, a court must construe facts in the light most favorable to the nonmoving party, *id.,* and it "must accept as true all of the factual allegations contained in the complaint." *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005).

### B. Analysis

As mentioned above, there are two Rule 12(b)(6) motions to dismiss counterclaims against personal injury claimant Brashear. One, to dismiss a counterclaim filed by the Jones Act seaman's employer (Caillou), and another filed by a non-employer vessel owner (CGT). The Court will discuss each in turn.

### 1. Brashear's Motion to Dismiss Caillou's Counterclaim, R. Doc. 41

Brashear contends that Caillou's counterclaim must be dismissed under Rule 12(b)(6) because no authority supports allowing a vessel owner employer to maintain a counterclaim for fraud against a Jones Act seaman in response to the seaman's claim for damages due to injury aboard the vessel. R. Doc. 41-1 at 1. Indeed, Brashear argues that permitting Caillou's counterclaim to go forward would improperly "create new law and circumvent the long-established" rules set forth in *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968). *Id.* Brashear also asserts that Caillou's counterclaim for fraud fails to meet the heightened pleading standard Rule 9(b) demands for such claims. *Id.*

The starting point for the Court's discussion on the availability of an affirmative claim by an employer against its seaman must be the Supreme Court's decision in *Still v. Norfolk & Western Railroad Company*, 368 U.S. 35 (1961). There, the Court held that a railroad worker's fraud in procuring his employment does not terminate the employment relationship, permitting the employee to maintain a suit for damages against his employer under the Federal Employers' Liability Act ("FELA"), even where the employee's misrepresentation contributed to the incident or injury that is the basis for his claim. *Id.* at 41. This conclusion was rooted in FELA's broad policy of holding railroads liable for their workers' personal injuries resulting from the railroad's negligence. In the Jones Act, Congress extended FELA's protections to seamen. *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 570 (5th Cir. 2012). FELA caselaw thus applies to Jones Act cases. *Id.* The Court's decision in *Still* thus "makes clear that a 'seaman . . . is not barred from suit under the Jones Act because he conceals a material fact in applying for employment.'" *Johnson*, 544 F.3d 296, 302 (5th Cir. 2008) (quoting *Gypsum Carrier, Inc. v. Handelsman,* 307 F.2d 525, 530 (9th Cir. 1962)).

Although a dishonest seaman may pursue a Jones Act claim against his employer, the Fifth Circuit, in *McCorpen*, established an affirmative defense for employers that eliminates their liability for maintenance and cure—that is, payments for food, lodging, and basic medical care—when an injured seaman obtains his employment through fraud. The *McCorpen* defense applies where the "employer subjects a seaman to a medical examination as part of the hiring process and the vessel owner can prove that the seaman: (1) intentionally misrepresented or concealed pertinent medical facts; (2) the non-disclosed facts were material to the company's decision to hire the claimant; and (3) there was a causal link between the concealed pre-existing injury and the employment injury." *Atl. Sounding Co. v. Petrey*, 402 F. App'x 939, 941 (5th Cir. 2010). If

the vessel owner satisfactorily proves these elements, then it is not liable for the maintenance and cure of a seaman who is injured in the service of his vessel. *Id.*

The Fifth Circuit has acknowledged that *McCorpen* is "in tension" with *Still*. *Boudreaux v. TransOcean Deepwater, Inc.*, 721 F.3d 723, 726 (5th Cir. 2013) (observing that "if," as *Still* establishes, "the seaman's dishonesty does not terminate his status as seaman or his damages remedy, the right to maintenance and cure ought be an *a fortiori* case; after all, it is an essential part of the employment relationship—a down payment on damages that allows the seaman to subsist and pay for basic medical expenses in the immediate aftermath of his injury"). Nonetheless, the *McCorpen* defense remains available.

In *Boudreaux v. TransOcean Deepwater, Inc.*, the Fifth Circuit clarified that defendants may wield *McCorpen* solely as a shield and not as a sword. *Id.* In other words, Jones Act employers can invoke *McCorpen* to insulate themselves from liability for continuing maintenance and cure benefits; they cannot, however, call upon *McCorpen* to recoup maintenance-and-cure benefits *already paid* to a seaman. *Id.* at 724. Thus, the *McCorpen* defense may not spawn a counterclaim by a vessel owner employer against his seaman employee for restitution of paid maintenance.

*Boudreaux* involved a Jones Act seaman who misrepresented that he had serious back problems when he filled out his pre-employment medical questionnaire. Later, while servicing equipment, the seaman injured his back. His employer paid him maintenance and cure for several years. *Id.* After the seaman filed suit seeking, among other things, further maintenance and cure payments, his employer discovered evidence of his pre-employment back problems. The employer thus asserted *McCorpen* as a defense to liability for continuing maintenance and cure payments. The employer then went a step further: purporting to rely on *McCorpen*, it filed a

counterclaim, seeking restitution of the maintenance and cure payments it had already made to the seaman. *Id.* at 725.

The Fifth Circuit dismissed the counterclaim and held that, as a matter of law, a vessel owner who establishes a *McCorpen* defense is not entitled to restitution for benefits already paid. *Id.* at 727. Rather, the Fifth Circuit ruled that a Jones Act employer who pays maintenance and cure to an injured seaman can recover those payments "only by offset against the seamen's damages award—not by an independent suit seeking affirmative recovery." *Id.* at 728.

The *Boudreaux* court noted that the law authorizes an employer to investigate a seaman's claim prior to paying maintenance and cure benefits[2] and establishes the *McCorpen* defense, enabling an employer to deduct benefits already paid from any damages award a seaman may receive. This existing regime, the court reasoned, strikes the appropriate balance between protecting seamen from the dangers of the sea and employers from dishonest workers. Endorsing the employer's "novel attempt to extend the [*McCorpen*] defense into an affirmative right of recovery" would result in an affirmative judgment against the seaman when the seaman does not recover damages or the damages award is insufficient to offset the seaman's liability for restitution. *Id.* at 727. Such a judgment "would stand as a serious impediment to the seaman's economic recovery, and its threat would have a powerful *in terrorem* effect in settlement negotiations." *Id.* In light of these considerations, the Fifth Circuit refused to unsettle longstanding maritime jurisprudence by exercising its "extraordinary power to a create a new right of action." *Id.* at 728.

---

[2] *See Morales v. Garjiak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by Gueveara v. Maritime Overaseas Corp.*, 59 F.3d 1496 (5th Cir. 1995) ("Upon receiving a claim for maintenance and cure, the shipowner need not immediately commence payments; he is entitled to investigate and require corroboration of the claim. . . . A shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the maintenance and cure[,] [not compensatory or punitive damages].").

Under *McCorpen* and *Boudreaux*, Brashear asserts that, at most, his employer, Caillou, could only receive an offset for prior maintenance and cure paid to him should he be awarded damages. R. Doc. 41-1 at 6. Put another way, Brashear contends that the Fifth Circuit's precedents preclude Caillou from bringing its counterclaim.

Caillou disagrees for several reasons. Although initially Caillou's arguments appear to have some persuasive force, upon closer analysis none are availing.

First, Caillou contends that *McCorpen* and its progeny have no bearing on the case at bar. Caillou points out that, by its terms, *McCorpen* only applies to fraud perpetrated by a seaman that occurs during the hiring process. Caillou's counterclaim, on the other hand, alleges that Brashear concealed medical treatment that he received *after* he had been hired. *Compare Atl. Sounding Co.*, 402 F. App'x at 941 (explaining that "the non-disclosed facts were material to the company's *decision to hire* the claimant" (emphasis added)) *and Nelton v. Cenac Towing Co., LLC*, No. 10-373, 2011 WL 289040, at *20 (E.D. La. Jan. 25, 2011) ("The Fifth Circuit, starting with *McCorpen* itself, has indicated that the defense applies only to pre-employment physical examinations."), *with* R. Doc. 47 at 3-4.

Under the facts alleged, it may well be the case that the *McCorpen* defense is unavailable to Caillou. But of course, if Caillou's argument is correct—and Brashear fabricated his claim that he was injured as a result of his service on Caillou's vessel—then Brashear will not be entitled to any recovery under the Jones Act; all he will have received are past maintenance and cure. And that is the same result that would obtain even if *McCorpen* and *Boudreaux* did apply. Thus, that *McCorpen* may not apply directly does not advance Caillou's argument.

Caillou also argues that its affirmative claim should not be barred because, unlike the employer in *Boudreaux*, the "remedy of set-off" is not available to it. R. Doc. 47 at 6. As

*Boudreaux* noted, precedent permits an employer to offset or deduct past maintenance and cure from any Jones Act damages recovered by the seaman to the extent the two are duplicative. *Id.* (citing *Wood v. Diamond M Drilling Co.,* 691 F.2d 1165, 1171 (5th Cir. 1982)). This is true, regardless of the applicability of *McCorpen. Id.*

Caillou is correct that, if Brashear's claims are fraudulent, then it will not be able to set off any prior maintenance and cure against a damages award to Brashear. That is because if Caillou prevails, then that necessarily means that Brashear was never injured during the vessel collision—and that means Brashear will not be entitled to any damages from which past maintenance and cure can be offset. But if the jury finds that Brashear did in fact falsely allege that his injuries stemmed from the collision, then it will not have to pay any damages award at all.[3] Thus, Caillou is no worse off than a Jones Act employer that can offset past maintenance and cure payments from a damages award to its seaman. Indeed, whereas an employer who establishes the *McCorpen* defense may still be liable for Jones Act damages exceeding the amount offset by past maintenance and cure, Caillou will not be liable for any damages to Brashear, if its allegations of fraud are meritorious.

Next, Caillou asserts that its affirmative claim should be allowed to proceed because the claim hinges on Brashear's subjective intent, whereas the *McCorpen* defense is satisfied by the lesser showing that a seaman made material misstatements or omissions. Therefore, according to Caillou, *Boudreaux*'s holding that *McCorpen* may only serve as a defense and not an offense does not apply when employer can prove actual, subjective intent to commit fraud. R. Doc. 47-

---

[3] Although Caillou contends that Brashear suffered no injury due to the vessel collision, it is conceivable that a seaman could suffer actual personal injuries but fraudulently overstate the extent of their injuries. In that situation, a seaman may be entitled to a Jones Act award for damages. At the same time, the seaman's employer may be able to deduct past maintenance and cure payments from any such award.

4.[4] In support, Caillou cites the original panel opinion in *Boudreaux*, which was later vacated, withdrawn, and substituted with the precedential opinion. *See Boudreaux*, 711 F.3d 501 (5th Cir.), *vacated by* 721 F.3d at 724 (5th Cir. 2013). In the vacated opinion, the panel majority observed that, unlike common law fraud claims, which turns on the subjective intent of the alleged wrongdoer, the *McCorpen* defense does not require any showing of *mens rea*; instead, it is satisfied merely by showing that, prior to hiring, the seaman failed to disclose medical information that an employer clearly sought. *Id.* (citing *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 174 (5th Cir. 2005)). Because establishing *McCorpen* does not require demonstrating a seaman's intent to conceal, the Fifth Circuit, in the since-vacated opinion, worried that transforming *McCorpen*'s defense into an authorization to pursue an affirmative claim against a seaman would, in practice, threaten honest seamen who inadvertently fail to

---

[4] Technically, this argument was pressed by the employer in *Crowe v. Marquette Transp. Co. Gulf-Inland, LLC*, No. 14-1130, (E.D. La.), in a 26-page memorandum objecting to the magistrate's denial of its motion for leave to file its counterclaim, R. Doc. 47-3, and a 21-page memorandum opposing the seaman's motion to dismiss its counterclaim, R. Doc. 47-4. Caillou's 9-page memorandum attempts to incorporate by reference these memoranda by the employer in *Crowe*. R. Doc 47 at 5-6. Caillou cites Federal Rule of Civil Procedure 10(c) as permitting this adoption by reference. That Rule permits "[a] statement in a *pleading* [to] be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c) (emphasis added). By its terms, the Rule applies only to the adoption of a statement in a *pleading*. The memorandum Caillou seeks to adopt, however, plainly is not a pleading, *see* Fed. R. Civ. P. 7 (listing the types of pleadings), and therefore Rule 10(c) provides no basis for Brashear to adopt by reference the arguments urged by the employer in *Crowe*. In addition, Brashear's maneuvering runs up against Local Rule 7.7. That provision states that, unless a party receives leave of court, memoranda "supporting or opposing a motion must not exceed 25 pages, excluding exhibits[.]" E.D. La. Local Rule 7.7. To add the entirety of the 26-page and 21-page memoranda by the employer in *Crowe* on top of Caillou's own 9-page memorandum would clearly violate this Rule.

In addition to the attempted adoption-by-reference, Brashear attached the employer's memorandum in *Crowe* as an exhibit to his memorandum. R. Doc. 47-3. And exhibits are expressly excluded from the page count limitation imposed by Local Rule 7.7. But permitting parties to attach as exhibits documents that are purely legal arguments—as opposed to documents that merely support the legal arguments already presented in a parties' memoranda—would effectively sanction an end-run around Local Rule 7.7. On the other hand, this Court is not inclined to stick its head in the sand and ignore potentially meritorious legal arguments. Accordingly, although the Court admonishes counsel to comply with the Local Rules, the Court will consider the primary arguments asserted by the employer in *Crowe* in favor of recognizing a cognizable affirmative claim for recovery by an employer against a seaman.

disclose material information to their employer with the specter of "crushing liability"—a result "inimical to the existing fabric of maritime law." *Id.*

Subsequently, as noted, the *Boudreaux* panel vacated its original opinion. In its precedential decision, the panel appeared to retreat from the view that *McCorpen* does not necessitate an intent to defraud. The *McCorpen* defense, the Fifth Circuit stated, applies "where a seaman procures his employment by 'intentionally' and 'fraudulently' concealing a material medical condition causally related to the injury later sustained." 712 F.3d at 726 (quoting *McCorpen*, 396 F.2d at 549). The Fifth Circuit further stated that the "requisite quantum of proof under *McCorpen* is the same as that for fraud claims." *Id.* In other words, although *Boudreaux* does not expressly state that *McCorpen* requires proof of subjective intent on the part of the seaman to defraud his employer, *Boudreaux* does equate an employer's burden of proof to establish intentional fraud under *McCorpen* with that required to establish the requisite scienter for common law fraud.

Nevertheless, Caillou argues that *Boudreaux* does not prohibit an employer's counterclaim against a seaman where the employer proves the seaman's subjective intent to commit fraud. R. Doc. 47-4 at 13. Caillou points out that, in *Boudreaux*, the employer "made a strategic decision not to litigate the case on its facts;" instead, the employer asked the court "to hold that *any* employer that establishes a *McCorpen* defense is automatically entitled to restitution." *Id.* at 725. Under Caillou's reading of *Boudreaux*, the case merely stands for the proposition that establishing the *McCorpen* defense, without more, does not *per se* entitle the employer to restitution. R. Doc. 47-4 D at 13.

But Caillou itself construes *Boudreaux* as "appear[ing] to recognize [that] the intentional concealment component of the *McCorpen* test is akin to common law fraud," which requires a

showing of subjective intent to defraud. *Id.* at 13. More importantly, *Boudreaux*'s broader teaching is that courts should proceed with great caution before "creating a right of action never before recognized in maritime law" given the existing scheme that carefully balances the interests of seamen against those of their employers. 721 F.3d at 724. Yet, that is precisely what Caillou urges here—without citation to a single reported decision recognizing the right it asserts. Indeed, Caillou asks this Court to go far beyond authorizing the type of claim the Fifth Circuit rejected in *Boudreaux*. That case concerned a claim to recoup maintenance and cure fees. But here, Caillou makes a much more expansive claim: it seeks, in addition to maintenance and cure payments, reimbursement for fees and expenses associated with investigating and defending Brashear's claim, increases in its insurance premiums, and harm to its reputation and business. R. Doc. 28 at 10-14. This certainly would create a new right of action never before recognized by maritime law—an outcome the Firth Circuit rejected in *Boudreaux*.

Caillou's final argument concerning *Boudreaux*'s inapplicability is that the decision is inconsistent with the Fifth Circuit's prior decision in *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840 (5th Cir. 2005), and that one of these decisions must be "overturned." R. Doc. 47-4 at 19.[5] Needless to say, this Court does not have the power to overturn the Fifth Circuit. In any event, this argument rings hollow because the two cases are distinguishable.

*Withhart* held that a Jones Act employer could sue its seamen-employee for property damage under a negligence theory. 431 F.3d at 845. First, the Fifth Circuit determined that, under general maritime law, vessel owners could sue negligent seamen for property damage. *Id.* at 842. Second, the Fifth Circuit determined that the Jones Act did not bar such a counterclaim for property damage, and therefore the counterclaim was viable. *Id.* at 845. In reaching its

---

[5] Caillou also makes this argument via its "incorporation" of the employer's memorandum in *Crowe*, No. 14-1130, (E.D. La.).

conclusion, the Fifth Circuit agreed with every other federal appeals court that FELA (and thus

the Jones Act, which imports FELA caselaw) did not abrogate an employer's common law right

to sue its employees for property damage. *Id.* at 843.

It is true that *Withhart* and *Boudreaux* reached opposite conclusions about the

cognizability of counterclaims asserted by Jones Act employers against their employees. But

there is good reason for the divergent outcomes in these cases: they address fundamentally

different types of counterclaims. *Withhart*, on the one hand, concerned the viability of a

negligent property damage counterclaim against a seaman—a cause of action long recognized by

general maritime law. And this counterclaim, *Withhart* explained, was consistent with the Jones

Act. That determination was based in part on the Fifth Circuit's finding that permitting the

counterclaim would not chill Jones Act seamen from pressing their statutory rights—a

conclusion that makes sense given that a property damage counterclaim would generally arise

out of a different set of operative facts than a seaman's Jones Act claims and thus is not likely to

be asserted by an employer merely as a retaliatory response to a seaman's Jones Act claims. 431

F.3d at 842.

*Boudreaux*, by contrast, dealt with a counterclaim for fraud by a seaman's employer

brought in response to the seaman's personal injury claims—a counterclaim without precedent in

maritime law. That this fraud-based counterclaim found little support in the caselaw was

unsurprising: judicially licensing such counterclaims could seriously impair seamen's ability to

assert their rights, a result that would conflict with courts' historic duty to safeguard seamen's

rights. *See Harden,* 11 F. Cas. at 485. Unlike the negligent property damage counterclaim in

*Withhart*, if a fraud counterclaim could go forward, then every time that a seaman sues his

employer under the Jones Act, the employer would simply turnaround and countersue, asserting

that the seaman's personal injury claims are fraudulent. The mere threat of this counterclaim could cow a seaman into foregoing otherwise meritorious claims. Thus, whereas *Withhart* found that allowing a negligent property damage counterclaim would not deter seamen from upholding their rights, *Boudreaux* understandably expressed concern that authorizing fraud counterclaims against Jones Act seamen may thwart seamen's ability to recover or even bring a Jones Act claim—an outcome that would be at odds with the Jones Act's liberal policy of providing relief for injured seaman. 721 F.3d at 724.

In sum, although at first blush there may appear to be some tension in the reasoning of *Boudreaux* and *Withhart*, upon closer scrutiny, the cases can be harmonized. And *Boudreaux*, which deals directly with the inviability of a novel counterclaim by a Jones Act employer based on a seamen's alleged fraud, is the more pertinent and relevant decision.

The Court bears in mind that *Boudreaux* addresses the cognizability of an affirmative claim for relief by a Jones Act employer when a seaman allegedly intentionally misleads his employer about a pre-existing injury whose disclosure would have been material to the hiring decision. The precise issue presented here is somewhat different: the cognizability of a Jones Act employer's fraud claim asserted against a seaman for allegedly intentional misrepresenting whether the injury that he complains of occurred as a result of his service on a vessel. The Court has located only a handful of cases confronting this latter issue. Overall, those decisions support the Court's determination that Caillou's counterclaim must be dismissed.

The most on point case is *Dolmo v. Galliano Tugs, Inc.*, No. 09-3976, 2011 WL 6817824, *1 (E.D. La. Dec. 28, 2011), *aff'd sub. nom* in *Dolmo v. Tugs*, 479 F. App'x 656 (5th Cir. 2012). There, a seaman sued his employer under the Jones Act and general maritime law. *Id.* at *1. The employer countersued to recover attorneys' fees and costs, contending that the seaman fabricated

the accident upon which he sued. The *Dolmo* court, in a decision cited favorably by *Boudreaux*, rejected the employer's claim largely based on historical and policy reasons. The court recognized that, although recovery of maintenance and cure payments to the seaman was "not the exact issue" before it, "that issue presents in lesser form some of the fundamental problems inherent in this counterclaim[.]" *Id.* at *2. The court viewed "[t]he problems with the potential ramifications of recognizing this counterclaim for fraud" as "exponentially enhanced from those associated with the mere repayment of maintenance and cure." *Id.* Moreover, the threat of a suit for fraud in response to a personal injury claim by a seaman "seriously undercuts the historical rationale and the very deference the admiralty gives its ward of the court." *Id.* The court also worried that recognizing the employer's claim would result in attorneys refusing to represent injured seamen.[6] *Id.*

Similarly, in *Whitchurch v. Canton Marine Towing Co.*, No. 16-3278, 2018 WL 3213137, at *2 (C.D. Ill. June 29, 2018), the court held that a Jones Act employer could not clawback maintenance and cure payments by pursuing a fraud counterclaim against a seaman who the employer alleged had fabricated the injury and accident sued upon. The court acknowledged that, unlike in the *McCorpen* line of cases, which concern fraud during the hiring process, it was confronted with fraud related to the occurrence of the accident and the injury itself. *Id.* But the court determined that the "general principles" enunciated in *Boudreaux* for prohibiting employers from asserting affirmative causes of actions against seamen applied to that case, too. *Id.* at *3. The court also cited the paucity of precedent supporting the employer's cause of action and expressed concern that permitting counterclaims by Jones Act employers would chill seamen from asserting their rights under maritime law. *Id.*

---

[6] As an additional reason supporting its conclusion, the *Dolmo* court noted that the employer had available the *McCorpen* defense.

Conversely, in *Crowe v. Marquette Transp. Co. Gulf-Inland, LLC*, No. 14-1130, R. Doc. 90 at 1 (E.D. La. May 5, 2015), a district court permitted an employer to assert a counterclaim for fraud against a seaman. In a two-paragraph Order and Reasons, the district judge overruled the magistrate's recommendation that the fraud claim was not cognizable. Deeming the issue a "close call," the district court distinguished *Boudreaux* because the plaintiff in that case "undisputedly suffered an injury" while performing his duties as a seaman, whereas the employer in *Crowe* contended that the seaman did not suffer an on-the-job injury. *Id.*; *see also id.* at R. Doc. 143 (denying seaman's motion to dismiss employer's counterclaim for the same reasons provided in the order granting leave to amend).[7]

Although the Court agrees with *Crowe* that the issue presented is a difficult one, the Court ultimately must side with the conclusions in *Dolmo* and *Whitchurch* that a Jones Act employer cannot be allowed to maintain a cause of action for damages against its seaman based on fraud in retaliation or response to a seaman's suit for maintenance and cure or damages. While a Jones Act employer—like Caillou in this case—may assert that its counterclaim for fraud is merely intended to recover the costs incurred in defending against supposedly dishonest claims, such a result is doubtful; in actuality, recovery on such a counterclaim would be highly unlikely due to the impecunious status of the average seaman; so the only purpose of allowing such a claim would be to serve as a threat to a seaman who files a claim which the Jones Act preserves. Furthermore, a ruling allowing such a claim would likely open the floodgates of

---

[7] In a sur-reply, Caillou attached a Findings of Fact and Conclusions of Law as well as a Judgment in civil action no. 83-1465, E.D. La., *Guidry v. Bengal Marine, Inc.* (Apr. 25, 1986). In that case, a plaintiff-seaman sued his Jones Act employer for injuries he allegedly sustained onboard his employer's vessel, and the employer countersued for fraud. The jury, through interrogatories, found that the seaman's personal injury claims were based on false representations. Thus, the jury found that the seaman was not entitled to the maintenance and cure payments that he had received. The district court therefore granted judgment to a vessel owner on its counterclaim. R. Doc. 65-1. Although the court in that case did award an affirmative recovery to the employer against its seaman, there is no indication that the seaman ever contested whether the counterclaim against him was cognizable.

litigation to disgruntled vessel owners who take extreme umbrage over being sued by their own crew members. In nearly every case in which a seaman claims injury due to vessel negligence or unseaworthiness, the vessel owner denies liability and causation. Essentially, the vessel owner disputes the statement or testimony of the seaman as to how he was injured, the nature and extent of his claimed injuries, and often claims that if there were any injuries, they were likely caused by prior incidents or prior disabilities unknown to the employer. These positions would spawn counterclaims based on fraud in nearly every case.

Under the present regime the vessel owner who prevails at trial as a result of a finding of no negligence or no unseaworthiness or a lack of causation pays nothing. No damages are assessed, and any court costs or attorney fees are usually paid by insurance, the cost of which is passed on to the consumer of the vessel owner's services. This approach has held for decades, and the case for creating a new right of action has not been made. The nearly complete absence of caselaw approving of the counterclaim asserted here in response to a seaman's Jones Act claim militates strongly in favor of dismissing the counterclaim. *Id.* at 728. ("[W]e are not so bold as to now claim a new view—one that the hundreds before us have overlooked or rejected."). So, too, do the serious misgivings articulated in *Dolmo* and *Crowe* about the deleterious effects that would result from permitting the type of counterclaim pressed here. As those courts observed, authorizing the affirmative right of action sought by the employer may well dissuade seamen from asserting their rights, either by causing them not to press meritorious claims or deterring counsel from taking on their cases. Although the scenario here is factually distinguishable from that in *Boudreaux*, this Court heeds the Fifth Circuit's admonition in that case that courts should be reticent to recognize rights of action that are novel in maritime law,

particularly when they would likely adversely affect the established rights of seamen.[8] 721 F.3d at 724.

Notably, barring a Jones Act employer from countersuing its seamen for fraud is consistent with the history and policy of the Jones Act itself. That statute arose out of the shortcomings of an earlier congressional enactment, a 1915 measure intended "to promote the welfare of American seamen . . . and to promote safety at sea." 38 Stat. 1164 (1915), *codified at* 46 U.S.C. § 50101 *et seq*; *see also* GRANT GILMORE AND CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY, (2d ed. 1975), at 325-27 [hereinafter, "THE LAW OF ADMIRALTY"]. In one provision, Congress sought to provide a cause of action for a mariner injured as a result of the negligence of his vessel's master or crew. Specifically, Congress prohibited application of the so-called "fellow-servant doctrine"—a rule that imputed the negligence of each member of the crew to all and was perceived as a bar to recovery for maritime negligence claims—to suits for injuries sustained by seamen aboard vessels. THE LAW OF ADMIRALTY at 325. Despite Congress's intent to remove any barriers to a seaman's ability to recover for negligence claims, the Supreme Court, in *Chelentis v. Luckenbach S.S. Co.*, interpreted the 1915 statute's bar to applying the fellow-servant rule as "irrelevant" to a seaman's recovery; rather, the Court held that longstanding jurisprudence limited a seaman's recovery to maintenance and cure only. 247 U.S. 372, 381, 384-85 (1918) (citing The Osceola, 189 U. S. 158, 175 (1903)). The decision left seaman without legal recourse—other than mere maintenance and cure—for the negligence of their master or crew.

---

[8] Although not directly on-point, the limited scholarly treatment of related issues appears to be in accord. *See* David W. Robertson & Michael F. Sturley, *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits*, 41 TUL. MARITIME L. J. 437, 490 n.357 (2017) n. 357 (explaining that when a seamen is alleged to have "faked his injuries, . . . [i]t seems likely (and dicta in *Boudreaux* [] suggests) that" the employer's overpayment to the seamen "will be treated analogously to *Boudreaux*" and therefore no affirmative recovery will be permitted).

Congress responded swiftly, enacting the Jones Act in 1920. Merchant Marine Act of 1920, Pub. L. No. 261 (1920). As part of its overarching goal of promoting the growth of the nation's "foreign and domestic commerce," the Jones Act conferred upon seamen the negligence cause of action against their employers that Congress had attempted to provide several years earlier. 41 Stat. 1007 (1920), *codified at* 46 U.S.C. § 30104 *et seq*. In establishing an affirmative right of recovery for seaman against their employers for negligence, Congress codified in admiralty law a fundamental tenet of tort theory: that the costs of a harm should be placed on the party best positioned to prevent the harm. By requiring vessel owners and operators to internalize the costs of unsafe vessel conditions, Congress incentivized these employers to provide their seamen with safe workplaces. In this way, the Jones Act promotes the well-being of seamen—a chief purpose behind the 1915 statute. The Jones Act thus cures inadequacies in the 1915 statute vis-à-vis the protection of seaman's rights and, in turn, their safety. And in so doing, the Jones Act encourages the development of the maritime industry, thereby advancing national commerce—a further goal of the statute. *See* 41 Stat. 1007.

To permit the counterclaim asserted by the Jones Act employer here would chip away at the Act's purpose. As discussed, this counterclaim would discourage seaman from pursuing their rights under the Jones Act. And, as tort theory teaches, employers would thus have a diminished economic incentive to encourage safe conditions on their vessels. That result would frustrate the Jones Act's purposes of promoting maritime safety and national commerce.[9] The Court thus finds that barring the Jones Act employer's counterclaim for fraud best effectuates the statute's broad aims of promoting maritime safety and, consequently, maritime commerce.

---

[9] This caption accompanied the original 1915 Act. In 1920, the Jones Act amended the 1915 Act to further enumerate seamen's rights. *See* Grant Gilmore & Charles L. Black, THE LAW OF ADMIRALTY, 325 (2d ed. 1975).

Accordingly, though Caillou may decry the balance the courts have struck between the rights of Jones Act employers and their seamen, this Court does not find occasion to upset it. To the extent that the Fifth Circuit in *Boudreaux* may not have entirely foreclosed the possibility of an affirmative recovery by a Jones Act employer that Caillou seeks here, "[t]he case for exercising" this Court's "extraordinary power to create a new right of action has not been made." *Id.* at 728.[10]

### 2. Brashear's Motion to Dismiss CGT's Counterclaims, R. Doc. 49

Brashear also moves to dismiss each of CGT's counterclaims under Rule 12(b)(6). R. Doc. 49. First, Brashear contends that dismissal of CGT's fraud and intentional misrepresentation claims is appropriate because CGT fails to meet the heightened pleading requirements for such claims under Rule 9(b). R. Doc. 49-1 at 1, 6-7. *Id.* at 6-7. Second, Brashear argues that CGT's malicious prosecution claim is premature. *Id.* at 7-9.[11]

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff [who pleads] fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th

---

[10] Because Caillou's counterclaim is not cognizable, the Court need not consider Brashear's alternative argument that the claim should be dismissed for failing to the meet the heightened leading requirements for claims of fraud.

[11] Notably, Brashear does not argue that *Boudreaux* bars CGT's counterclaims. Presumably, that is because CGT is not Brashear's employer. Accordingly, the concerns that permitting a Jones Act employer to countersue its seaman for fraud may preclude a seaman from asserting his rights under that statute are not implicated by CGT's counterclaims.

Cir. 2008) (citations omitted). "Put simply, Rule 9(b) requires the complaint to set forth the 'who, what, where, and how of the events at issue.'" *Id.* (citation omitted).

The Court first considers CGT's counterclaim for fraud. CGT alleges that, on or around November 17, 2020, Brashear "was already being treated for the same conditions and injuries for which he now alleges were a result of the November 26, 2020 collision." R. Doc. 34 at ¶3. CGT also alleges that "Brashear treated for his alleged claims of injury from November 26, 2020 without disclosing the pre-existing conditions and injuries" and "concealed and misrepresented them as being from the . . . collision." *Id.* ¶4. However, CGT fails to identify when and to whom Brashear's allegedly fraudulent statements were made. *See Dorsey*, 540 F.3d at 339. CGT therefore has not satisfied the heightened requirements of Rule 9(b). *See id.*[12]

Turning to CGT's intentional misrepresentation claim, "[t]he elements of a Louisiana delictual fraud or intentional misrepresentation cause of action are: (a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999). Because such a claim includes the elements of fraud, it is subject to the pleading hurdles imposed by Rule 9(b). *See, e.g.*, *Coleman v. Sears Home Improvement Prods., Inc.*, No. 16-2537, 2017 WL 1089580, *10 (E.D. La. Mar. 21, 2017); *Schafer v. State Farm & Fire Casualty Co.*, No. 06-8262, 2008 WL 11353621, *1 (E.D. La. June 11, 2008); *Dorsey v. N. Life Ins. Co.*, No. 04-0342, 2005 WL

---

[12] Brashear takes issue with CGT alleging its fraud claim "on information and belief." R. Doc. 49-1 at 2, 7. "If the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief. However, this luxury may not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Dorsey*, 540 F.3d at 339 (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Rather, the pleading "must set forth a factual basis for such belief." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). CGT's counterclaim does not provide a factual basis for its allegations concerning Brashear's alleged fraud. Any future fraud claim pled on information and belief must furnish a factual basis for such allegations.

2036738, *9-10 (E.D. La. Aug. 15, 2005). Indeed, it is unclear how CGT's fraud claim is distinct from its claim for intentional misrepresentation. In any event, assuming these claims are distinct, the intentional misrepresentation claims fails to satisfy Rule 9(b) for the same reasons its fraud claim falls short.

Last is CGT's counterclaim for malicious prosecution. "Under Louisiana law, a malicious prosecution claim requires: 1) the commencement of an original criminal or civil judicial proceeding; 2) its legal causation by the present defendant against the present plaintiff who was the defendant in the original proceeding; 3) its bona fide termination in favor of the present plaintiff; 4) the absence of probable cause for such proceeding; 5) the presence of malice therein; and 6) damages conforming to legal standards resulting to the plaintiff." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2000) (citing *Hibernia Nat'l Bank v. Bolleter,* 390 So. 2d 842, 843 (La. 1980)). CGT concedes that this cause of action "appears premature." R. Doc. 52 at 12. The Court agrees. The present case concerning Brashear's injury claims has not terminated, let alone concluded in CGT's favor. Thus, as a matter of law, CGT cannot prevail on its malicious prosecution claim against Brashear while the current litigation proceeds.

CGT indicates that it will request leave to amend if its fraud or intentional misrepresentation claims are inadequate. R. Doc. 52 at 12. Although the deadline for amendments to pleadings passed somewhat recently, *see* R. Doc. 69, the Court will grant CGT leave to amend given that the submission date for the motion to dismiss predated the deadline for amendments. CGT must file any amended pleading within 10 days of the entry of this Order.

## IV.    CONCLUSION

For these reasons,

**IT IS ORDERED** that claimant Brashear's motion to dismiss Caillou's counterclaims, R. Doc. 41, is **GRANTED**. Caillou's counterclaims against Brashear are hereby **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that claimant Brashear's motion to dismiss CGT's counterclaims, R. Doc. 49, is **GRANTED** in part. CGT's malicious prosecution counterclaim against claimant Brashear is **DISMISSED** with prejudice. CGT's fraud and intentional misrepresentation claims against Brashear are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that CGT is granted 10 days to amend its counterclaims against Brashear.

New Orleans, Louisiana, this 18th day of August, 2022.

**UNITED STATES DISTRICT JUDGE**